IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FRANCISCO GARCIA and MANUEL ROSALES AGUILAR, <br><br> Plaintiffs, <br><br> v. <br><br> JAC-CO CONSTRUCTION, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) No. 2:23-cv-2485-SHL-cgc |

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST JAC-CO CONSTRUCTION, INC.**

Before the Court is Plaintiffs Francisco Garcia and Manuel Rosales Aguilar's Motion for Entry of Default Judgment against Defendant Jac-Co Construction, Inc., filed on December 21, 2023. (ECF No. 30.) Plaintiffs seek default judgment against Defendant Jac-Co Construction, Inc. ("Jac-Co"), including an award of Plaintiffs' unpaid wages, liquidated damages, attorney's fees, and costs under the Fair Labor Standards Act. (Id. at PageID 94–95.) For the following reasons, the motion is **GRANTED IN PART**.

## BACKGROUND

Plaintiffs filed their First Amended Complaint on September 28, 2023, alleging that Jac-Co failed to pay them minimum wages and overtime pay, in violation of the Fair Labor Standards Act ("FLSA"), and failed to pay their regular hourly wages, in violation of their contract. (ECF No. 10 at PageID 23.) Deborah Lynn Jackson was also included as a defendant in the amended complaint, but she has since been dismissed from the suit with prejudice. (ECF Nos. 32, 34.)

Jac-Co is a painting company that has an annual revenue of at least $500,000. (ECF No. 10 at PageID 24–25.) Garcia and Aguilar were painters who worked on residential and commercial properties on behalf of Jac-Co throughout Shelby County. (Id. at PageID 25.)

Garcia received $24 per hour for his services, and Aguilar $23 per hour. (Id. at PageID 26.) On May 28, 2023, James Earl Jackson, who was the owner and operator of Jac-Co up to that point, died. (Id. at PageID 24, 26.) Garcia and Aguilar worked 3.5 more weeks after James Earl Jackson's death, but they received no compensation for that work. (Id. at PageID 26.)

In addition to their regular pay, they failed to receive 1.5x overtime pay for forty-five hours of overtime. (ECF No. 30-1 at PageID 98, 100.) In total, Garcia seeks $3,360 in regular pay and $1,620 in overtime wages for a total of $4,980 in unpaid wages. (Id. at PageID 98.) Aguilar seeks $3,220 in regular pay and $1,552.50 in overtime wages for a total of $4,772.50. (Id. at PageID 100.)

The original complaint was served on Jac-Co through Leland Jackson on August 9, 2023 (ECF No. 8 at PageID 21), and the amended complaint was served on Jac-Co through Deborah Lynn Jackson on October 5, 2023. (ECF No. 19 at PageID 55.) Show cause orders were issued on both September 14 (ECF No. 9), and October 25 (ECF No. 17), directing Jac-Co to respond to the respective complaints. Both orders were mailed to two relevant mailing addresses in hopes of getting Jac-Co's attention. (Id.) However, Jac-Co never responded to the complaints or to the show cause orders.

Plaintiffs moved for default against Jac-Co on November 14 (ECF No. 21), and the Clerk's Office entered default the following day (ECF No. 26). Plaintiffs now seek the entry of default judgment against Jac-Co under Federal Rule of Civil Procedure 55(b). (ECF No. 30.) They ask the Court to award Garcia $9,960 and Aguilar $9,545 for unpaid wages and liquidated damages, and to award Plaintiffs $5,442 for attorney's fees and costs under 29 U.S.C. § 216(b). (Id. at PageID 94–95.)

## ANALYSIS

Entry of default judgment is a two-step process under the Federal Rules of Civil Procedure. First, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, the clerk may enter default judgment against a defendant only when they seek a "sum that can be made certain by computation" and the defendant is neither a minor nor incompetent. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Here, Plaintiffs properly sought entry of default after Jac-Co failed to plead or otherwise defend itself in this case. (See ECF No. 21.) They now seek entry of default judgment against Jac-Co under Rule 55(b)(1) (ECF No. 30), but the Court will conduct its own review under Rule 55(b)(2) instead.[1]

The Court is required to "exercise sound judicial discretion" in determining whether an application for default judgment under Rule 55(b)(2) should be granted. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2685 (4th ed. 2022). In fact, "even if a defendant defaults, a court may still deny a default judgment if the plaintiff has failed to state a claim on which relief can be granted." Escalante v. Lidge, 34 F.4th 486, 493 (5th Cir. 2022).

Moreover, "[u]pon default, the well-plead allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." Wehrs v. Wells, 688 F.3d 886, 892 (7th Cir. 2012). Damages must therefore be proved unless

---

[1] Fed. R. Civ. P. 55 (b)(1) applies when a party is seeking a default judgment based on a sum certain. As explained herein, because such a sum certain is not applicable here, the Court proceeds under Rule 55(b)(2).

3

they are "liquidated or capable of calculation." Id. (internal quotation marks omitted). Damages are liquidated "when the amount thereof has been ascertained and agreed upon by the parties or fixed by operation of law." KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 20 (1st Cir. 2003).

A court is not required to hold a hearing on a motion for default judgment, but may do so when one is necessary to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. A.P. Moller-Maersk A/S v. Safewater Lines (I) Pvt., Ltd., 784 F. App'x 221, 229 n.6 (5th Cir. 2019).

Here, Plaintiffs allege in their amended complaint that Jac-Co failed to pay them minimum wages and overtime pay, as required by the FLSA, and regular wages, as required by their contract. (ECF No. 10 at PageID 23.) This Court's jurisdiction is predicated on the existence of an FLSA claim, and thus that component of Plaintiffs' case is addressed first.

I. **FLSA Claim**

The FLSA both protects the federal minimum wage, see 29 U.S.C. § 206 (a)(1), and requires overtime pay for certain covered employees at time and a half pay, see 29 U.S.C. § 207(a)(1). Employers are required to pay their employees who are "employed in an enterprise engaged in commerce . . . wages . . . [of] not less than . . . $7.25 an hour." 29 U.S.C. § 206 (a)(1)(C). Similarly, an employer should not "employ any of his employees . . . for a workweek longer than forty hours unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Based on the allegations of the amended complaint that are now accepted as true, Jac-Co fits the FLSA's definition of an enterprise

4

engaged in commerce that was an employer of Garcia and Aguilar; thus, Jac-Co is subject to the FLSA.

Garcia, who made $24 per hour, and Aguilar, who made $23 per hour, were not paid their regular wages for their last 3.5 weeks of work with Jac-Co. (ECF No. 10 at PageID 26.) In addition to their normal forty hours, both Plaintiffs worked fifteen overtime hours during the first three weeks of that stretch. (ECF No. 30-1 at PageID 98, 100.) Plaintiffs allege that FLSA's minimum wage and overtime protections apply to them here. However, because Plaintiffs were not paid *anything at all*, they are actually seeking more than their minimum wage and overtime—they are also seeking their regularly expected wages, an amount in excess of the $7.25 per hour federal minimum wage.

The part of an employee's anticipated paycheck that falls between minimum wage and overtime protections is called gap time: "'time that is not covered by the [FLSA's] minimum wage provisions'" and "'time that is not [directly] covered by the [FLSA's] overtime provisions because it does not exceed the overtime limit.'" Conner v. Cleveland Cnty., 22 F.4th 412, 421 (4th Cir. 2022) (quoting Davis v. Abington Mem'l Hosp., 765 F.3d 236, 243 (3d Cir. 2014)). Pure gap time claims, which are attempts to recover regular wages when no applicable minimum wage or overtime violation is asserted, fall outside the protections of the FLSA: "Courts widely agree that there is no cause of action under the FLSA for 'pure' gap time wages—that is wages for unpaid work during pay periods without overtime." Davis, 765 F.3d at 244. Those civil actions belong in state court. However, here, Garcia and Aguilar assert, as their FLSA claim, both minimum wage and overtime pay violations, and hence are not seeking damages under the FLSA for pure gap time.

5

When an employee brings an overtime claim, like Garcia and Aguilar have, the gap in pay between the FLSA-guaranteed provisions and an employee's regular wages is known as overtime gap wages. A circuit split highlights the nuances of whether bringing an action in federal court is proper when plaintiffs seek overtime protection through the FLSA and their regular wages via a federal court's authority to exert supplemental jurisdiction. The Sixth Circuit has not yet weighed in on the overtime gap split, but there is persuasive guidance from other circuits, which calls for a determination as to whether the FLSA minimum wage and overtime claims predominate over the regular wages that neither Plaintiff received.

    A.   Disallowing Overtime Gap Pay

The Second Circuit interprets the FLSA as an improper vehicle for bringing regular wage claims in conjunction with minimum wage or overtime pay violations. They reasoned that the "FLSA does not provide recourse for unpaid hours below the 40–hour threshold, even if the employee also works overtime hours the same week." Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 116 (2d Cir. 2013). An overarching fear was the potential of "creating a federal remedy for all wage disputes." Id. The Second Circuit emphasized that these actions should find their home in a state court of general jurisdiction. Id.

Recent decisions from New York district courts have predictably followed the Second Circuit's binding guidance: "[T]his Court disagrees that such damages [for regular wages] are recoverable under the FLSA. Rather, the FLSA statute requires payment of minimum wages and overtime wages only." Choi v. AHC Med. Servs., PLLC, No. 22-cv-1450, 2023 WL 5612394, at *8 (E.D.N.Y. Aug. 1, 2023) (magistrate judge report & recommendation) (citation omitted). Courts have voiced particular displeasure when high-salaried executives attempt to utilize the

6

FLSA to recover wages in federal court: "Consequently employees—and particularly highly paid employees—cannot use the FLSA to pursue breach of contract claims." Momin v. Quantierra Advisors LLC, No. 21-cv-612, 2022 WL 2002282, at *2 (S.D.N.Y. June 3, 2022). In Momin, the court stressed that an annual salary of $80,000 brought the plaintiff outside of "the class of vulnerable workers that the FLSA minimum wage provisions were designed to protect." Id. While courts in the Second Circuit stop the inquiry when a suit asks for more than just minimum wages or overtime pay, Momin highlights the importance of protecting lower-wage workers— which is relevant here.

    B.   Overtime Gap Inclusion: Leaning into the Purpose of the FLSA

The FLSA was passed with "broad remedial intent" to correct workplace deficiencies affecting vulnerable Americans. Keller v. Miri Microsystems LLC, 781 F.3d 799, 806 (6th Cir. 2015). The statute is "humanitarian in purpose" and "must not be interpreted or applied in a narrow, grudging manner." Monroe v. FTS USA, LLC, 860 F.3d 389, 396 (6th Cir. 2017) (citations omitted). "The FLSA should be given a broad reading, in favor of coverage. It is a remedial statute that 'has been construed liberally to apply to the furthest reaches consistent with congressional direction.'" Kelley v. Alamo, 964 F.2d 747, 749–50 (8th Cir.1992) (quoting Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959)). Furthermore, "[e]xemptions from or exceptions to the Act's requirements are to be narrowly construed against the employer asserting them." Johnson v. City of Columbia, 949 F.2d 127, 129–130 (4th Cir. 1991) (citations omitted). The Fourth Circuit, in contrast to the Second Circuit, relied on the overarching purpose of the FLSA when interpreting the statute as an appropriate vehicle to bring unpaid regular wages claims in tandem with overtime pay violations.

Monahan v. Cnty. of Chesterfield created the jurisprudential foundation for allowing overtime gap pay claims, but the FLSA claims in that specific factual scenario failed. 95 F.3d 1263, 1284 (4th Cir. 1996). Recent decisions have solidified the viability of overtime gap claims: "[T]to the extent any doubt remains after Monahan that overtime gap time claims are cognizable under the FLSA overtime provision, today we explicitly conclude that they are." Conner v. Cleveland Cnty., 22 F.4th 412, 424 (4th Cir. 2022).

Most overtime gap claims, like in Conner, involve situations where employees received a paycheck, but were underpaid both their regular wages and overtime pay. A Department of Labor ("DOL") statutory interpretation of the FLSA overtime provision provides guidance in these situations: "In determining the number of hours for which overtime compensation is due, all hours worked by an employee for an employer in a particular workweek must be counted." 29 C.F.R. § 778.315. Oftentimes employers will argue that because some overtime compensation has been paid, the focus of the FLSA inquiry should only be on the amount of overtime that was allegedly undercompensated. However, an employer cannot skirt FLSA protections by simply disguising or reallocating regular pay as overtime pay. Ultimately, "[n]othing in § 778.315 or Monahan suggests a difference between *under*payment and *non*payment of straight time wages. Simply put, *all* means all." Conner, 22 F.4th at 425.

However, Garcia and Aguilar's circumstances are unique because no wage payment was made at all. While many similar situations should be treated as state law breach of contract claims, the significant overtime compensation sought here[2] and the overarching remedial

---

[2] Seeking unpaid regular wages in federal court (when overtime pay is implicated) should likely have constraints on the upper bounds. While district courts in the Second Circuit come out differently on the allowance of overtime gap claims, their emphasis on protecting vulnerable workers is convincing, see Momin, 2022 WL 2002282, at *2; the FLSA should not protect

purpose of the FLSA make their claims viable in federal court, and persuasive overtime gap guidance from the Fourth Circuit makes their regular wages recoupable as well. All that to say, Garcia and Aguilar have successfully pled a violation of 29 U.S.C. § 206 (a)(1) & 207(a)(1) and are therefore entitled to entry of default judgment against Jac-Co.

## II.   Supplemental Jurisdiction over Breach of Contract for Regular Wages

Given this Court's determination that FLSA is an appropriate federal hook for this wage dispute, the Court will exercise its discretion in granting supplemental jurisdiction over the unpaid regular wages, which is sought via a breach of contract claim. Garcia is entitled to damages of $2,200 and Aguilar to $2,060 for unpaid regular wages.

## III.   Damages

Under the FLSA, an employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiffs assert that Garcia is owed his promised wages of $4,980 and an additional $4,980 as liquidated damages for $9,960 in total damages. (ECF No. 30 at PageID 94.) Similarly, Aguilar is allegedly owed $4,772.50 in regular wages and $4,772.50 in liquidated damages for a total of $9,545. (Id. at PageID 94–95.)

---

highly paid individuals when their overtime claims are only a small part of the total damages they seek. Here, Garcia and Aguilar's minimum wage and overtime claims ($2,780 for Garcia and $2,712.50 for Aguilar) constitute 55.8% of the total unpaid wages for Garcia ($4,980 total unpaid wages) and 56.8% for Aguilar ($4,772.50 total unpaid wages). As the concentration of FLSA-related pay dips below 50% of the unpaid wages, the action may be more appropriate in state court because the state law breach of contract claim would then predominate over the FLSA claims.

9

The FLSA only authorizes liquidated damages for employees' "unpaid minimum wages, or their unpaid overtime compensation . . . and an additional equal amount as liquidate damages." 29 U.S.C. § 216(b). Liquidated damages do not include regular wages; only minimum wages or overtime pay should be doubled.[3]

This distinction changes the liquidated damages calculation that Plaintiffs sought in their motion for entry of default judgment. The requested liquidated damages amount of $4,980 and $4,772.50 simply doubled the Plaintiffs' unpaid wages. (See ECF No. 30 at PageID 94.) Instead, the gap in pay between Plaintiffs' minimum wages and their regular hourly wage ("Min-Reg Dif" in the calculations below) must be excluded because that portion of their pay is not protected by the FLSA and not covered by the liquidated damages statute. That exclusion creates the same minimum wage amount for each Plaintiff; $7.25 * 40 hours = $290 for a full week of minimum wage pay. The "FLSA Pay" column below was created by adding the overtime pay for each Plaintiff to their minimum wage pay. The FLSA Pay is then doubled to create liquidated damages. Thus, the Court **AWARDS** liquidated damages of **$2,780** for Garcia and **$2,712.50** for Aguilar, in addition to their unpaid wages amounts.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Garcia | | | | | |
| | | | Included | Excluded | Included | | | |
| | Hours | Regular Pay | Minimum Wage | Min-Reg Dif | Overtime Pay | Total Pay | FLSA Pay | Liq Damages |
| Week 1 | 55 | $ 960 | $ 290 | $ 670 | $ 540 | $ 1,500 | $ 830 | |
| Week 2 | 55 | $ 960 | $ 290 | $ 670 | $ 540 | $ 1,500 | $ 830 | |
| Week 3 | 55 | $ 960 | $ 290 | $ 670 | $ 540 | $ 1,500 | $ 830 | |
| Week 4 | 20 | $ 480 | $ 290 | $ 190 | | $ 480 | $ 290 | |
| | | $ 3,360 | | | $ 1,620 | $ 4,980 | $ 2,780 | $ 2,780 |

---

[3] While the "or" conjunction contemplates doubling either minimum wage or overtime pay, the Court reads the statute as intending to include both minimum wage and overtime compensation in a liquidated damages calculation when both protections are implicated.

| | Hours | Regular Pay | Aguilar<br>Included<br>Minimum Wage | Excluded<br>Min-Reg Dif | Included<br>Overtime Pay | Total Pay | FLSA Pay | Liq Damages |
|---|---|---|---|---|---|---|---|---|
| Week 1 | 55 | $ 920 | $ 290 | $ 630 | $ 517.50 | $ 1,437.50 | $ 807.50 | |
| Week 2 | 55 | $ 920 | $ 290 | $ 630 | $ 517.50 | $ 1,437.50 | $ 807.50 | |
| Week 3 | 55 | $ 920 | $ 290 | $ 630 | $ 517.50 | $ 1,437.50 | $ 807.50 | |
| Week 4 | 20 | $ 460 | $ 290 | $ 170 | | $ 460.00 | $ 290.00 | |
| | | $ 3,220 | | | $ 1,552.50 | $ 4,772.50 | $ 2,712.50 | $ 2,712.50 |

### IV. Attorney's Fees and Costs

The FLSA enables the recovery of attorney's fees in certain situations: "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 USC 216(b). Federal Rule of Civil Procedure 54 provides that motions for attorney's fees "must be filed no later than 14 days after the entry of judgment; specify the judgment and the statute, rule, or other grounds entitling the movant to the award, [and] state the amount sought or provide a fair estimate of it . . . ." Fed. R. Civ. P. 54(d)(2)(B)(i–iii). In addition, this district requires "an affidavit or declaration of counsel setting out in detail the number of hours spent on each aspect of the case, and the rate customarily charged by counsel for such work" and "an affidavit or declaration of another attorney in the community, who is not otherwise involved with the case, setting out the prevailing rate charged in the community for similar services." LR 54.1(b).

Mr. Bryce Ashby's declaration comes close to meeting all the requirements listed above; he filed his declaration in a timely manner, specified the FLSA authority for attorney's fees, stated the total hours and hourly rate billed for his work on this case, and detailed the total costs his firm incurred with filing the matter. (ECF No. 30-3 at PageID 101–02.) However, he failed to include an "affidavit or declaration of another attorney in the community, who is not otherwise

11

involved with the case, setting out the prevailing rate charged in the community for similar services." See LR 54.1(b). To complete its request for attorney's fees and costs, Plaintiffs are **DIRECTED** to provide an affidavit from another attorney in the community attesting to the reasonableness of the hourly rates charged in this matter. The Court will award attorney's fees and costs as appropriate once it receives the requested supplemental information, which shall be due fourteen days from the date of this Order.

## **CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART** Plaintiffs' Motion for Default Judgment. The Court **AWARDS** Garcia $4,980 in unpaid wages and $2,780 in liquidated damages for a total of **$7,760**, and **AWARDS** Aguilar $4,772.50 in unpaid wages and $2,712.50 in liquidated damages for a total of **$7,485**. Furthermore, Plaintiffs are **DIRECTED** to, within fourteen days, provide an affidavit from another attorney in the community attesting to the reasonableness of the hourly rates charged in this matter to complete its request for attorney's fees and costs.

**IT IS SO ORDERED,** this 21st day of May, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
